Slip Op. 07-160

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | | |
|---|---|---|---|
| FORMER EMPLOYEES OF JOY TECHNOLOGIES, INC., | : | | |
| Plaintiffs, | : | Before: | WALLACH, Judge |
| | : | Court No.: | 06-00088 |
| v. | : | | |
| | : | **PUBLIC VERSION** | |
| UNITED STATES SECRETARY OF LABOR, | : | | |
| Defendant. | : | | |

[Plaintiffs' Rule 56.1 Motion for Remand to the Department of Labor for Further Investigation is GRANTED, and Defendant's Denial of Certification is REMANDED.]

Dated: October 31, 2007

LeBoeuf, Lamb, Green & MacRae LLP, (Melvin S. Schwechter and Emily A. Dephoure) for Plaintiffs Former Employees of Joy Technologies.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Joan M. Stentiford); and Stephen Jones, Office of the Solicitor, U.S. Department of Labor, for Defendant United States.

## OPINION

**Wallach, Judge:**

# I
# INTRODUCTION

This matter comes before the Court on consideration of the United States Department of Labor's ("Labor") third remand results denying Plaintiffs, Former Employees of Joy Technologies ("FEO Joy"), certification for Trade Adjustment Assistance ("TAA"). Plaintiffs seek review of Labor's determination in Joy Technologies, Inc.; DBA Joy Mining Machinery;

MT. Vernon Plant, MT. Vernon, IL; Notice of Negative Determination on Remand, 72 Fed. Reg. 1,771 (January 16, 2007), C.R. at 429 ("Remand Results").  As set forth below, the Remand Results are not supported by substantial evidence or otherwise in accordance with law.  Therefore, this matter is remanded to Labor for further investigation consistent with the instructions contained herein.

## II
## BACKGROUND

Joy Technologies, Inc. ("Joy") is a subsidiary of Joy Global Inc., which is "the world's leading" manufacturer of underground mining machinery and surface mining equipment used in the extraction of coal, minerals and ores. Joy Global Inc., Annual Report (Form 10-K), at 5 (October 31, 2004), Confidential Record ("C.R.") at 38.  Joy Global Inc. is headquartered in Milwaukee, Wisconsin, and maintains operations throughout the United States, and globally, with annual sales in excess of $1.4 billion. Id. at 5, 11-12, 16, C. R. at 38, 44-45, 49.  Joy Global Inc. has two primary business segments, one of which is Joy Technologies, Inc. d/b/a Joy Mining Machinery, a Delaware corporation headquartered in Warrendale, Pennsylvania. Letter from Lawrence J. Lepidi, Dir. of Law and Gov't Affairs, Joy Mining Mach. ("Lepidi") to Del-Min Amy Chen, Program Analyst, Div. of Trade Adjustment Assistance, Dep't of Labor ("Chen") (January 6, 2006) at 1-2, C.R. at 169-70.  Joy has extensive operations in the United States and overseas with key operations in the United Kingdom, Australia, South Africa and China. Id.  On September 23, 2005, Joy closed its manufacturing operations in Mt. Vernon, Illinois. Joy Response to Dep't of Labor Bus. Confidential Data Request ("CDR") (August 15, 2005) at 1, C.R. at 12.  All workers at the Mt. Vernon plant were fired. Dep't of Labor, Findings of the

2

Investigation (September 15, 2005), C.R. at 129.

## A
## Labor's First TAA Investigation

On August 2, 2005, prior to the plant closing, the International Brotherhood of

Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local 483 ("Union") filed a

petition for Trade Adjustment Assistance with Labor alleging that the pending job losses were a

result of production shifting abroad. Petition for Trade Adjustment Assistance ("Petition")

(August 2, 2005), C.R. at 2.  In support of its petition, the Union submitted a shipping receipt

indicating that crawler track frames made in Mexico had been shipped to the Mt. Vernon plant in

August 2005. Shipping Receipt from Extreme Mach. & Fab, Inc. to Joy Mining Mach. (August

16, 2005), C.R. at 23; Transportation Receipt from Joy Mining Mach. (August 16, 2005), C.R. at

24; Memorandum of Law in Support of Plaintiffs' Rule 56.1 Motion to Remand the Case to the

Dep't of Labor for Further Investigation and Motion to Supplement the Admin. Record

("Plaintiffs' Motion") at 3.  The Union also submitted photographs of underground mining

machinery marked "Hecho in Mexico." Fax to Devon Richardson, Analyst, Dep't of Labor, from

Union Committee, Joy Mining Mach. (August 17, 2005) at 4-7, C.R. at 25-28; see also Reply

Memorandum of Law in Support of Plaintiffs' Rule 56.1 Motion to Remand the Case to the

Department of Labor for Further Investigation and Motion to Supplement the Administrative

Record ("Plaintiffs' Reply"), Ex. B.

The Department of Labor initiated an investigation into TAA eligibility for the FEO Joy

on August 9, 2005. Negative Determinations Regarding Eligibility to Apply for Worker

Adjustment Assistance and Alternative Trade Adjustment Assistance ("First Negative

Determination") at 2, C.R. at 133 (September 15, 2005). As part of its investigation, Labor instructed Joy to provide a Business Confidential Data Request which was completed by Mr. Lawrence Lepidi, an attorney for Joy. CDR, C.R. at 12; see also Letter from Joyce Nduku, Int'l Trade Analyst, Div. of Trade Adjustment Assistance, Dep't of Labor to Mr. Matt Haley, Manager, Human Res., Joy Mining Mach. (August 16, 2005), C.R. at 19. In the questionnaire, Joy accounted for its activities at the Mt. Vernon facility and stated that the plant "builds and rebuilds Shuttle Cars, rebuilds electrical motors used in certain types of mining machinery, and rebuilds gearboxes for armored face conveyors." CDR at 1, C.R. at 12. In addition, Mr. Lepidi [discussed the work of the Mt. Vernon plant]. Joy also checked boxes indicating [information regarding its levels of sales and productions]. With respect to a shift in production, Joy stated that "the work being performed at Mt. Vernon is being transferred to a new facility," id. at 1, C.R. at 12, and [discussed the reasons for transferring the Mt. Vernon plant work and stated that] "the production is being shifted to . . . Kentucky as part of an overall restructuring." Id. at 5, C.R. at 16.

During its investigation, Labor Analyst, Devon Richardson, wrote a Memorandum to File in which he stated that [he had received Joy's explanation of its production practices]. In addition, the memorandum recounted an email sent by Mr. Lepidi on August 25, 2005 to Mr. Richardson in which Mr. Lepidi [again discussed Joy's production practices].

On September 15, 2005 Labor issued its first negative determination denying the Former Employees of Joy Technologies ("FEO Joy") eligibility to apply for TAA and Alternative Trade Adjustment Assistance ("ATAA") for Older Workers. First Negative Determination, C.R. at 132; see also Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment

Assistance ("Notice of Determinations"), 70 Fed. Reg. 62,344 (October 31, 2005).  Labor

concluded, based on its investigation, that the statutory criteria for TAA eligibility pursuant to 19

U.S.C. § 2272(a)(2)(A)[1] were not met because sales and employment rates had increased overall

during the applicable period and that the component parts imported from Mexico were not "like

or directly competitive" with the final products produced at the plant and were shipped only due

to a lack in domestic capacity. First Negative Determination at 3, C.R. at 134.  Hence, the

imports were not a contributing factor in the layoff.  It furthermore, concluded that the eligibility

requirement pursuant to 19 U.S.C. § 2272(a)(2)(B) was not met because the shift in production

was to another domestic facility and had not shifted abroad.  Id.  Labor based its finding that all

---

[1] 19 U.S.C. § 2272(a) provides that:
(a) In general. A group of workers (including workers in any agricultural firm or subdivision of an agricultural firm) shall be certified by the Secretary as eligible to apply for adjustment assistance under this chapter pursuant to a petition filed under section 2271 of this title if the Secretary determines that--
    (1) a significant number or proportion of the workers in such workers' firm, or an appropriate subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated; and
    (2) (A) (i) the sales or production, or both, of such firm or subdivision have decreased absolutely;
    (ii) imports of articles like or directly competitive with articles produced by such firm or subdivision have increased; and
    (iii) the increase in imports described in clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision; or
    (B) (i) there has been a shift in production by such workers' firm or subdivision to a foreign country of articles like or directly competitive with articles which are produced by such firm or subdivision; and
    (ii) (I) the country to which the workers' firm has shifted production of the articles is a party to a free trade agreement with the United States;
    (II) the country to which the workers' firm has shifted production of the articles is a beneficiary country under the Andean Trade Preference Act, African Growth and Opportunity Act, or the Caribbean Basin Economic Recovery Act; or
    (III) there has been or is likely to be an increase in imports of articles that are like or directly competitive with articles which are or were produced by such firm or subdivision.

Mt. Vernon production had shifted to the Lebanon, Kentucky facility on Joy's July 29, 2005

press release in its company-wide newsletter, in which it stated that Joy was to open a new

facility in Kentucky which will "manufacture shuttle cars, rebuild motors and rebuild AFC

gearcases," and in reliance on Mr. Lepidi's repeated assurances. Findings of the Investigation at

3, C.R. at 131.  Labor based its denial of the petition for ATAA on the underlying denial of TAA

eligibility upon which ATAA certification is contingent. First Negative Determination at 4, C.R.

at 135.  On October 31, 2005, Labor published its notice of negative determination in the Federal

Register. Notice of Determinations, 70 Fed. Reg. 62,345.


## B
### Labor's Reconsideration (Second) TAA Investigation

On November 3, 2005, two Former Employees of Joy, Jerome Tobin and John Moore,

submitted a request for reconsideration to Labor. Letter from Jerome Tobin and John Moore to

Timothy F. Sullivan, Dir., Div. of Trade Adjustment Assistance, Dep't of Labor (November 3,

2005), C.R. at 146.  In their petition, the FEO Joy explained that in addition to the activities

detailed in Labor's negative determination, the principal function of workers at the Mt. Vernon

plant was to supply components of mining machinery to Joy's Franklin, Pennsylvania plant as an

upstream supplier, but that Mt. Vernon was also the site of manufacture of the "High Wall

mining system, Flexible Conveyor Train haulage system and the original Articulated Battery

Haulage Cars." Id.  In addition, the FEO Joy stated that between 2004 and 2005 the plant had

been used to produce 69 conveyors, 72 conveyor supports, and 86 crawler track frames for the

Franklin, Pennsylvania site and that this production had shifted to Mexico to a company by the

name of Equimin. Id.  On November 16, 2005, the Department of Labor granted the FEO Joy's

request for reconsideration and agreed to conduct further investigations based on new

information provided by the petitioners. Dep't of Labor, Notice of Affirmative Determination

Regarding Application for Reconsideration, C.R. at 153 (November 16, 2005).  The workers

were permitted to file a new TAA petition as secondarily-affected workers on the back of Labor's

affirmative TAA certification of Joy's Franklin, Pennsylvania plant. Fax from Chen to Bill

Staggs (November 15, 2005), C.R. at 152.

On November 17, 2005, Bill Staggs, the FEO Joy's union representative, received an

email from Matt Haley of Joy's human resources department, denying the FEO Joy access to

information relating to the Franklin, Pennsylvania facility. Email from Matt Haley, Manager,

Human Resources, Joy Mining Mach. to Bill Staggs (November 17, 2005) ("Work Order

Request") at 1, C.R. at 159.  Mr. Haley however, did confirm that the Mt. Vernon facility

supplied the Franklin plant, and that track frames fabricated in Mexico were finished at the Mt.

Vernon plant. Id. at 2, C.R. at 160.  Mr. Haley described the Mexican components as "overflow"

work from other Joy facilities, "not work Mt. Vernon does regularly," but work that was brought

in to keep the Mt. Vernon facility open for a period of time for the benefit of the employees who

would lose their jobs as a result of the plant closure. Id.

In the course of Labor's second investigation, it resubmitted questions to Joy specifically

concerning what parts the Mt. Vernon facility supplied to the Franklin, Pennsylvania plant,

whether fabrication was outsourced to Mexico and the nature of the Mexican imports. Letter

from Chen to Lepidi (December 21, 2005) at 1-2, C.R. at 163-64.  In response to Labor's

questions, Joy submitted [information concerning Joy's production practices].

7

On January 19, 2006, the Department of Labor issued a Notice of Negative Determination on Reconsideration and subsequently published a notice of its determination in the Federal Register. Dep't of Labor, Notice of Negative Determination on Reconsideration (January 19, 2006) ("Second Negative Determination"), C.R. at 180-83; Joy Technologies, Inc.; DBA Joy Mining Machinery; Mt. Vernon Plant; Mt. Vernon, IL; Notice of Negative Determination on Reconsideration, 71 Fed. Reg. 4,937 (January 30, 2006), as amended by, Joy Technologies, Inc. DBA Joy Mining Machinery Mt. Vernon Plant, Mt. Vernon, Illinois; Notice of Negative Determination on Reconsideration, 71 Fed. Reg. 9,162 (February 22, 2006).  Labor denied the FEO Joy's application for TAA as secondarily-affected workers because the TAA certification for Franklin expired on January 19, 2002, prior to the relevant time period. Second Negative Determination at 2-3, C.R. at 181-82; see also Dep't of Labor, Notice of Negative Determination on Reconsideration (Corrected) (February 6, 2006), C.R. at 187.  Labor affirmed its prior finding that there had been no shift in production to Mexico and that products manufactured in Mexico were not "like or directly competitive" with those produced at Mt. Vernon. Id. at 3, C.R. at 189. Labor also characterized any work transferred to Mexico as temporary assignments of "overflow" work were not normally undertaken at the Mt. Vernon facility. Id.

## C
### Labor's Voluntary Remand (Third) Investigation

On March 15, 2006, the FEO Joy sought judicial appeal of Labor's Negative Determination. Letter from John P. Moore and Jerome P. Tobin to the U.S. Court of Int'l Trade (March 15, 2006).  Plaintiffs were appointed counsel by the court.  On September 25, 2006, the

court granted the parties' consent motion to remand the case to Labor for further investigation. Court Order, Ct. No. 06-00088, September 25, 2006. In its motion to the court, Labor stated that the purpose of the voluntary remand was to "further investigate the extent of imports supplied to Joy Technologies, Inc from Mexico, and determine whether that 'contributed significantly' to any movement of jobs out of the United States." Sec'y of Labor, Consent Motion for Voluntary Remand, Ct. No. 06-00088, September 20, 2006.

Upon remand, on September 28, 2006, Labor requested additional information from Joy. Letter from Chen to Lepidi (September 28, 2006), C.R. at 235. Specifically Labor asked Joy to identify "core" and "non-core" manufacturing functions at Mt. Vernon, and explain "what is meant by 'overflow' work," where the "overflow" work orders came from, and where outsourced work from Mt. Vernon and Franklin were done. Id. at 2, C.R. at 236. In addition, Labor asked Joy to respond to Plaintiffs' contentions that components manufactured at Mt. Vernon were produced in Mexico, that production had shifted to Mexico, and that Joy purchased component parts from a Mexican supplier named Equimin. Id. On October 13, 2006, Joy submitted a response to Labor's questions. Letter from Lepidi to Chen (October 13, 2006), C.R. at 247. In Joy's response, Mr. Lepidi [again discussed Joy's production practices.]

On December 8, 2006, Labor sent follow up questions to Joy. Letter from Chen to Lepidi (December 8, 2006), C.R. at 412. Joy responded on December 15, 2008. Letter from Lepidi to Chen (December 15, 2006), C.R. at 414. In its response, Joy stated [more information concerning its production practices].

On December 27, 2006 and December 29, 2006, Labor followed up with additional requests for information to Joy. On December 27, 2006, Labor requested clarification regarding

9

Joy's import of crawler track frames from Equimin. Letter from Chen to Lepidi (December 27,

2006), C.R. at 420.  On December 29, 2006, Labor sought clarification regarding the alleged

statements of a Joy employee, Mr. Folkerts, pertaining to the outsourcing of fabrication of

continuous miners to Mexico. Letter from Chen to Lepidi (December 28, 2006), C.R. at 421. Joy

asserted in its response, [and provided additional information regarding its production practices.]

During the remand period, the FEO Joy submitted the affidavits of several workers to

Labor. Buckingham Aff., C.R. at 258-62; Cole Aff., C.R. at 268-73; Lisenbey Aff., C.R. at 281-

83; Moore Aff., C.R. at 292-96; Patterson Aff., C.R. at 304-08; Tobin Aff., C.R. at 316-20;

Vaughn Aff., C.R. at 328-32; Wilkey Aff., C.R. at 340-44; Hamilton Aff., C.R. at 356-59;

Kirkpatrick Aff., C.R. 366-70; Baxley Aff., C.R. at 378-81; Cockrum Aff., C.R. at 394-96

(collectively "Worker Affidavits").  The affidavits contradict Joy's contentions that the

production of crawler track frames and components for continuous miners for the Franklin plant

was not part of Mt. Vernon's core activities. See, e.g., Buckingham Aff. at 2, C.R. at 259; Cole

Aff. at 2-3, C.R. at 269-70; Lisenbey Aff. at 1-2, C.R. at 281-82.  Instead the workers attested to

the fact that those activities were regular, core manufacturing functions of the Mt. Vernon plant;

that Mt. Vernon had always manufactured continuous miner components from scratch for

Franklin, and that crawler track frames, which Joy characterized as "overflow" work, had been a

regular manufacturing function at Mt. Vernon. Id.; see also Moore Aff. at 3, C.R. at 294.  In

addition, workers demonstrated personal knowledge of a shift in production to Mexico during the

relevant time. See Buckingham Aff. at 3-4, C.R. at 260-62; Cole Aff. at 4-5, C.R. at 271-73.

Specifically, the affidavits established that not all of the production at Mt. Vernon had shifted to

the Lebanon, Kentucky facility because the new plant does not manufacture mining machinery

10

components from scratch. Id.; see also Joy Mining Machinery, Global Caplight, Press Release (July 29, 2005), C.R. at 126.

On January 8, 2007, Labor issued its third negative determination denying TAA certification for the FEO Joy. Remand Results, 72 Fed. Reg. at 1,771, C.R. at 429. Labor concluded, based on its investigation, that all production at Mt. Vernon had shifted to the Lebanon, Kentucky facility and that the additional information provided by Plaintiffs failed to satisfy the statutory requirements for certification. Id. at 1,774, C.R. at 446-47. Labor stated that because there was no decline in sales, it could not interpret the plant closure as an attempt to adjust to increased foreign competition. Id., C.R. at 445-46. Furthermore, Labor recited individual workers' affidavits, but noted that "the Department has not received any information to support the allegation of a shift of production abroad." Id. at 1,773, C.R. at 442. As a result, Labor denied the FEO Joy's petition for certification for TAA benefits on remand. Id. at 1,774, C.R. at 446-47.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(d)(1). Oral argument was held on September 7, 2007.

### III
### STANDARD OF REVIEW

The court will uphold a determination by the Secretary of Labor denying certification for Trade Adjustment Assistance if it is supported by substantial evidence. 19 U.S.C. § 2395(b). "The findings of fact by the Secretary of Labor . . . if supported by substantial evidence, shall be conclusive." Id.; see also Former Employees of Tyco Elecs., Fiber Optics Div. v. United States, 27 CIT 685, 686, 264 F. Supp. 2d 1322 (2003). Substantial evidence is "more than a mere

11

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.

Ed. 126 (1938).  However, while Labor has considerable discretion in its investigation of TAA

claims, "there exists a threshold requirement of reasonable inquiry." Former Employees of BMC

Software, Inc. v. United States, 454 F. Supp. 2d 1306, 1312 (CIT 2006) (citing Former

Employees of Hawkins Oil & Gas, Inc. v. United States, 17 CIT 126, 130, 814 F. Supp. 1111

(1993).  "If Labor fails to undertake a reasonable inquiry, the investigation cannot be sustained

upon substantial evidence before the Court." Former Employees of Merrill Corp. v. United

States, 387 F. Supp. 2d 1336, 1345 (CIT 2005) (internal citations omitted).  In reviewing Labor's

determination, the court does not owe deference to Labor if Labor's investigation was

inadequate. Id.  Indeed, Courts have not hesitated to set aside agency determinations which are

the product of "perfunctory investigations." Former Employees of BMC Software, Inc., 454 F.

Supp. 2d at 1312 (citing Former Employees of Ameriphone, Inc. v. United States, 27 CIT 1611,

1613, 288 F. Supp. 2d 1353 (2003)).  Additionally, "the rulings made on the basis of those

findings [must] be in accordance with the statute and not be arbitrary and capricious, and for this

purpose the law requires a showing of reasoned analysis." Former Employees of Rohm and Haas

Co., v. United States, 27 CIT 116, 122, 246 F. Supp. 2d 1339 (2003) (quoting Int'l Union v.

Marshall, 584 F.2d 390, 396 n.26 (D.C. Cir. 1978)).  For good cause shown the court may

remand the case to Labor "to take further evidence." Id. at 121 (citing 19 U.S.C. § 2395(b)).

"Good cause exists if the Secretary's chosen methodology is so marred that his finding is

arbitrary or of such a nature that it could not be based on substantial evidence." Former

Employees of Barry Callebaut v. United States, 25 CIT 1226, 1308, 177 F. Supp. 2d 1304 (2001)

12

(citing <u>Former Employees of Linden Apparel Corp. v. United States</u>, 13 CIT 467, 469, 715 F.

Supp. 378 (1989)).

IV

**DISCUSSION**

A

**<u>Labor's Negative Determination is Not Supported by Substantial Evidence
Because the Record is Inconsistent and Labor Failed to Obtain the Necessary
Information Regarding Volume of Imports and Shift in Production</u>**

1

**The Record is Inconsistent on Critical Issues**

Plaintiffs argue that Labor's determination is not supported by substantial evidence

because Labor failed to take into account inconsistencies in the record and adequately investigate

the FEO Joy's allegations. Plaintiffs' Motion at 14-15. Plaintiffs, <u>inter alia</u>, contend that Labor

adopted Joy's characterization of "core" and "non-core" activities and discounted the workers'

sworn affidavits, despite its obligation to conduct its investigation with "the utmost regard for the

interest of the petitioning workers." <u>Id.</u> at 15-16 (citing <u>Former Employees of Oxford Auto</u>

<u>U.A.W., Local 2088 v. United States</u>, Slip Op. 2003-129, 2003 Ct. Intl. Trade LEXIS 128, at *23

(CIT 2003)); <u>see also</u> <u>Former Employees of BMC Software, Inc.</u>, 454 F. Supp. 2d at 1312.

Plaintiffs argue that Labor's investigation of the imports was inadequate because Labor failed to

obtain quantitative import data from Joy on which to base its determination. <u>See, e.g.</u>, Plaintiffs'

Reply at 1-2. Plaintiffs point to the record evidence [concerning Joy's production practices].

Plaintiffs' Motion at 16 (citing CDR at 2-3, C.R. at 13-14, Letter from Chen to Lepidi (December

15, 2006) at 1-2, C.R. at 414-15). Plaintiffs argue that Labor acted contrary to statute by stating

that it did not need import data to make its determination because Joy's overall sales did not

13

decline during the relevant period. Id. at 16-17.

[      ]. Defendant's Memorandum in Opposition to Plaintiffs' Memorandum of Points and Authorities in Support of USCIT R. 56.1 Motion for Judgment Upon the Agency Record ("Defendant's Response") at 21-22.  As a result, Defendant concludes that the record does not support a finding that Joy workers lost their jobs as a result of the Mexican imports. Id. at 22. Indeed, Defendant asserts that the relevant question in this case is not whether Joy imported parts from Mexico, but "whether Joy began purchasing from Mexico components that were Mt. Vernon's core function." Id. at 19.  Defendant rejects Plaintiffs' contention that Labor should have obtained additional import data from Joy, and maintain that Labor correctly relied on [Joy's information concerning its production practices]. Id. at 22-23.  Defendant contends that Labor had no reason to doubt Joy's statements, and that Plaintiffs' entire case is unfounded because it is based on "speculation fueled by nothing more than seeing a few parts, on one occasion, marked 'hecho in Mexico.'" Id. at 23-24.

The record is inconsistent on the issue of what constituted "core" and "non-core" functions at the Mt. Vernon plant.  Defendant contends that it was correct in relying on conclusory statements made by Joy that crawler track frames, subsequently imported from Mexico, were produced only on an overflow basis at Mt. Vernon.  The worker affidavits however, are evidence to the contrary. See, e.g., Buckingham Aff. at 2-4, C.R. at 259-61; Cole Aff. at 2, C.R. at 269; Vaughn Aff. at 3-4, C.R. at 330-31; Wilkey Aff. at 3-4, C.R. at 342-43.  In sworn affidavits, the workers stated that crawler track frames constituted 30% to 50% of the total output of the plant during the relevant period, and that manufacturing components for other Joy facilities was, and had always been, a regular manufacturing function of Mt. Vernon. See

14

Plaintiffs' Reply at 6-7 (citing Worker Affidavits). These statements were unaccounted for in Labor's findings. Labor's determination must be supported by substantial evidence and may rely on unverified information supplied by company officials, only if there are no obvious contradictions in the record. See, e.g., Former Employees of Barry Callebaut v. United States, 357 F.3d 1377, 1383 (Fed. Cir. 2004); 19 U.S.C. § 2395(b). Here, the contradictions are obvious and preclude a conclusion that Labor's decision was based on substantial evidence.

Furthermore, the test for whether Plaintiffs are eligible for TAA due to increased imports is: (1) workers must have been totally (or partially) separated from their work; (2) production or sales must have decreased absolutely; and (3) imports of articles like or directly competitive with articles produced by the subject facility must have increased, and (4) the increase must have contributed importantly to the workers separation, and to the decline in sales or production. 19 U.S.C. §§ 2272(a)(1) and 2272(a)(2)(A). Labor correctly concluded that (1) workers were separated; and (2) production declined absolutely due to the plant closure. See Remand Results at 1,774, C.R. at 443. However, with respect to the third prong, Labor stated in its determination that:

> Even if there were increased subject firm imports during the relevant period, the increased imports could not have "contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production" because sales for Joy increased during the relevant period. Id., C.R. at 445.

The statute requires that increased imports contribute to the separation and to the decline in sales or production, not both. See 19 U.S.C. § 2272(a). Labor agreed that production declined completely. Remand Results at 1,774, C.R. at 443. Furthermore, Labor stated that data previously provided by Joy reflected [information concerning Joy's production practices]. CDR

15

at 2-3, C.R. at 13-14, Work Order Request at 1, C.R. at 159, <u>Remand Results</u> at 1,774, C.R. at 445.  These two statements are inconsistent because overflow work brought in from Mexico constitutes "imports" for purposes of the TAA eligibility requirement, and therefore do not support Labor's conclusion.

**2**
### Labor Failed to Obtain the Data Necessary to Make a Determination Regarding the Volume of Foreign Imports and Shift in Production

Plaintiffs contend that Labor failed to obtain information from Joy regarding the volume of imports from Mexico and to support its finding that no shift in production had occurred. Plaintiffs say that Labor made only a cursory attempt to obtain a list of its imports of mining machinery components before the third remand investigation, requesting this information only a week before issuing its determination, and throughout the investigation failing to utilize its subpoena power to obtain outstanding information. Plaintiffs' Motion at 18.  Plaintiffs furthermore, contend that it was impossible for Labor to determine whether increased imports contributed importantly to the employees' separation from their jobs because Joy did not submit any import data to Labor and Labor, in turn, did not have any import data upon which to base its conclusion. <u>Id.</u> at 19.  As a result, Plaintiffs argue that Labor's decision does not meet the substantial evidence standard. <u>Id.</u> at 19-20.

With respect to proving a shift in production, Plaintiffs contend that there is ample evidence in the record that Joy shifted production of mining machinery components, like or directly competitive with those formerly manufactured at Mt. Vernon to Mexico. <u>Id.</u> at 20. Plaintiffs submitted affidavits and photographs, and Joy attested to [information concerning Joy's

16

production practices.] Id. (citing  Letter from Lepidi to Chen (January 6, 2006) at 2, C.R. at 170;

Letter from Lepidi to Chen (December 15, 2006) at 1, C.R. at 414).  Plaintiffs contend that Labor

did not at any point during the investigations receive verifiable data with actual work orders from

Mt. Vernon or import data, and therefore should not have relied on Joy's statements to the

contrary. Id. at 20-21; see also Remand Results at 1,774, C.R. at 444.

Defendant argues that Labor's conclusion that Plaintiffs did not lose their jobs because of

increased imports is supported by substantial evidence on the record because the job losses were

a result of [Joy's decisions concerning its production practices] and not to Mexico or any other

country. Defendant's Response at 24.  With respect to Labor's reliance on Joy's statements,

Defendant contends that it is appropriate for the Secretary of Labor, as a general matter to rely on

unverified statements by company officials, when nothing in the record "suggests that the

information provided is inaccurate or unreliable." Id. at 15.  Defendant cites to authority that

Labor need not verify information that it deems "creditworthy" and that does not contradict the

record evidence. Id. (citing Former Employees of Barry Callebaut, 357 F.3d at 1383).  Defendant,

in fact, seeks to establish a practice by Labor of relying on such "unverified" information and

points to cases this practice was upheld by the courts. Id. at 15-16 (citing Local 167, Int'l

Molders and Allied Workers' Union AFL-CIO v. United States, 643 F.2d 26, 31 (1st Cir. 1981);

United Steel Workers of Am., Local 1082 v. United States, 15 CIT 121, 122 (1991); Former

Employees of Kleinerts, Inc. v. United States, 23 CIT 647, 653, 74 F. Supp. 2d 1280 (1999)).

Defendant furthermore argues that "[a]ll of plaintiffs' allegations were carefully investigated by

Labor and refuted by the information provided by the company" and that there is no reason Labor

should not have relied on the information provided by Joy. Id. at 20.  Defendant cites Former

<u>Employees of Barry Callebaut v. United States</u>, 357 F.3d at 1383, for the proposition that reliance on unverified company statements in and of itself is sufficient to constitute substantial evidence to support a negative determination. Defendant's Response at 28.  Defendant contends that the evidence provided by Plaintiffs is insufficient to establish any connection between Joy and [other manufacturers], which would indicate a shift in production of core manufacturing to Mexico of work previously undertaken at Mt. Vernon. <u>Id.</u> at 24-25.  Defendant argues that Joy adequately explained the connection between itself and [other manufacturers] and that Joy ceased doing business with [other manufacturers]. <u>Id.</u> at 25-26.  Defendant also contends that the pictures Plaintiffs seek to admit as evidence depict roof supports and not crawler tracks, the production of which is the core function Plaintiffs allege had shifted. <u>Id.</u>

Here, Labor did not base its decision on substantial evidence in the record.  Plaintiffs requested that Labor obtain work orders, customs records and receipts of imported merchandise during the relevant period. Letter from Melvin Schwechter, LeBoef, Lamb, Greene & MacRae to Chen (October 20, 2006) at 4, C.R. at 255.  However, Joy did not furnish Labor with the relevant information and did not submit any quantitative data, even upon request. Letter from Lepidi to Chen (October 13, 2006) at 3, C.R. at 249.  Instead, Labor argues that statements by company officials are sufficient to constitute substantial evidence.  Defendant is correct that the courts have found that Labor may rely on so-called "unverified" statements by company officials, but only when such statements do not contradict other evidence in the record.  Here, there are substantial inconsistencies and contradictions in the record.  For example, [Joy provided information concerning its production practices].  In response to its request for import data, Labor chose to rely on statements by Joy to circumvent the request, and disregarded evidence

18

submitted by Plaintiffs.  Defendant argues that on all occasions where Labor prompted Joy for information, "Joy responded with cogent answers and explanations from knowledgeable sources." Defendant's Response at 18.  However, on several occasions, Joy did not respond to Labor's questions at all. See, e.g., Letter from Lepidi to Chen (January 6, 2006) at 2, C.R. at 170; Letter from Lepidi to Chen (October 13, 2006) at 4, C.R. at 250; Letter from Lepidi to Chen (December 27, 2006), C.R. at 420; Letter from Lepidi to Chen (January 5, 2007), C.R. at 426-27. For example, in response to Labor's query whether Joy had outsourced components abroad, Joy simply stated that employment had increased at the Franklin plant. Letter from Lepidi to Chen (January 6, 2006) at 2, C.R. at 170; Letter from Lepidi to Chen (October 13, 2006) at 4, C.R. at 250.  Further,  Defendant's assertion [regarding its production practices], is an unsubstantiated statement made by Joy, which is contradictory to evidence in the record. See, e.g., Defendant's Response at 25-26.  Labor did not obtain information from Joy regarding its foreign suppliers and imports of continuous miner components, but based its determination solely on statements made by Joy--with no regard for contradictory evidence in the record.  These shortfalls in Labor's investigation do not support a finding that its determinations were based on substantial evidence.

## B
## Labor's Negative Determination is Not in Accordance with Law

Plaintiffs contend that Labor misapplied the TAA statute when it stated that "even if there were increased subject firm imports during the relevant period, the increased imports could not have 'contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production' because sales for Joy increased during the relevant period." Plaintiffs' Motion at 21 (citing Remand Results at 1,774, C.R. at 445).  Plaintiffs assert that

under TAA legislation, a finding of either a decline in production or a decline in sales is a sufficient basis upon which to certify workers for TAA eligibility. Consequently, Plaintiffs argue that Labor's statement that import data was irrelevant is legally erroneous. Id. at 22. Plaintiffs also argue that Labor misstated the TAA eligibility requirements by concluding, on the basis of Joy's statement [regarding its production practices], that no shift in production could have occurred. Id. at 22-23. Plaintiffs allege that Labor failed to inquire fully into the relationship between Joy and [another entity], and failed to investigate Joy's statement [regarding its production practices]. Id. at 22.

Labor denies that its conclusion was based on [information regarding Joy's production practices]. Defendant's Response at 27. Instead Defendant argues that Labor's determination was based on its finding that "no shift of underground mining machinery production abroad and no increased imports of underground mining machinery during the relevant period had occurred." Id. (citing Remand Results at 1,771, C.R. at 430). [Joy provided information concerning its production practices]. Id. (citing Remand Results at 1,774, C.R. at 444). Defendant also contends that the worker affidavits corroborate [information concerning Joy's production practices.] Id. at 28.

The TAA statute, requires not only that workers were separated, 19 U.S.C. § 2272(a)(1), and that the separation resulted from an increase in imports, 19 U.S.C. § 2272(a)(2)(A)(iii), but also that "the sales or production, or both, of such firm or subdivision have decreased absolutely." 19 U.S.C. § 2272(a)(2)(A)(I). Labor asserts that both sales and production must have decreased in order for the Department to certify the workers and concludes, on that basis, that the FEO Joy have not met the statutory requirements for TAA certification. Labor's

conclusion is not in accordance with law because production decreased completely due to the plant closure and the statute on its face requires a decline in <u>either</u> production or sales or both. <u>Id.</u>; <u>see also</u> <u>Remand Results</u> at 1,774, C.R. at 443; <u>Former Employees of Swiss Indus. Abrasives v. United States</u>, 17 CIT 945, 948, 830 F. Supp. 637 (1993) (stating that the plain language of the statute clearly allows for certification of a claim if Labor determines that production has declined due to increased imports, with no corresponding requirements that Labor find a decline in sales).

In its final determination, Labor stated that "Joy does not have an affiliated production facility in Mexico . . . [t]herefore, there is no facility to which Joy can shift production." <u>Remand Results</u> at 1,774, C.R. at 446. Title 19 of the United States Code, section 2272(a)(2)(B)(I) provides that workers are entitled to TAA certification if "there has been a shift in production by such workers' firm or subdivision to a foreign country of articles like or directly competitive with articles which are produced by such firm or subdivision . . . ." The statute is silent regarding ownership. However, Labor's regulations clearly state that ownership is not required for production to shift. The Department's instructions for implementation of the TAA, states that "[s]ince the law does not address ownership of the producing firm, the shift in production can be either by the firm or subdivision moving the plant to Mexico or Canada, or the U.S. firm <u>contracting</u> with a different firm located in Mexico or Canada." <u>Operating Instructions for Implementing the Amendments to the Trade Adjustment Assistance for Workers Program in Title V of the North American Free Trade Agreement (NAFTA) Implementation Act</u>, 59 Fed. Reg. 3,871, 3,873-74 (January 27, 1994) (emphasis added). Thus, even if Joy did not own Equimin, its relationship with Equimin, or any foreign supplier with which Joy contracts, does not preclude a finding by Labor that production had shifted. Because Labor misstated the TAA

requirements, as set forth in 19 U.S.C. §§ 2271(2)(A)(ii) and 2272(a)(B)(I), its determination is not supported by substantial evidence.


# V
## CONCLUSION

For the foregoing reasons, this matter is remanded to the Secretary of Labor for further investigation consistent with the specific instructions contained herein.


_/s/ Evan J. Wallach____
Evan J. Wallach, Judge

Dated: October 31, 2007
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____     :
                                     :
FORMER EMPLOYEES OF                  :
JOY TECHNOLOGIES, INC.,              :
                                     :
         Plaintiffs,                 :     Before:      WALLACH, Judge
                                     :     Court No.:   06-00088
    v.                               :
                                     :
UNITED STATES SECRETARY OF           :
LABOR,                               :
                                     :
         Defendant.                  :
                                     :
_____     :
```

ORDER AND JUDGMENT

Upon consideration of the Department of Labor's ("Labor") Voluntary Remand Determination, filed pursuant to this court's Order dated September 25, 2006; the court having reviewed all comments contesting Labor's Remand Determination and all pleadings and papers on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED ADJUDGED AND DECREED that Labor's Remand Determination in <u>Joy Technologies, Inc.; DBA Joy Mining Machinery; MT. Vernon Plant, MT. Vernon, IL; Notice of Negative Determination on Remand</u>, 72 Fed. Reg. 1,771 (January 16, 2007) is hereby REMANDED; and it is further

ORDERED that Labor shall further investigate this case consistent with the specific instructions of this court and that Labor and Plaintiff shall cooperate on additional information gathering and on verification of existing information in the record; and it is further

ORDERED that Labor shall, within sixty (60) days of the date of this Order, issue a remand determination; and it is further

ORDERED that all parties shall review the court's Opinion in this matter and notify the court in writing on or before Thursday November 8, 2007, whether any information contained in the Opinion is confidential, identify any such information, and request its deletion from the public version of the Opinion to be issued thereafter. The parties shall suggest alternative

language for any portions they wish deleted.  If a party determines that no information needs to be deleted, that party shall so notify the court in writing on or before Thursday November 8, 2007.


__/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: October 31, 2007
New York, New York

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____    By: _____
                                        Deputy Clerk